United States District Court
Southern District of Texas
**ENTERED**
May 28, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| WILLIAM OSINSKI, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-189 |
| | § | |
| LAREDO COLLEGE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM, REPORT, AND RECOMMENDATIONS OF
THE UNITED STATES MAGISTRATE JUDGE**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral of the District Judge. On February 11, 2021, United States District Judge Marina Garcia Marmolejo denied Plaintiff's motion for remand, Dkt. No. 8, and referred the question regarding the viability of Plaintiff's state law claims to United States Magistrate Judge Christopher dos Santos. (Dkt. No. 11). Plaintiff asserts that the Court does have jurisdiction over the state law claims stemming from the Texas Veteran's Employment Preference Act ("TVEPA") and the breach of contract against Laredo College, but that the Court does not have jurisdiction over the fraud claims because Laredo College is entitled to immunity.[1] (Dkt. No. 14 at 15). Laredo College asserts that the Court has no jurisdiction over the TVEPA or the fraud claim because it is entitled to governmental immunity, but it agrees that the Court has jurisdiction over the breach of contract claim.

---

[1] Plaintiff states that the individually named defendants are only being sued for violations of Plaintiff's federal rights under the Uniformed Services Employment and Reemployment Rights Act and that they are entitled to immunity for the alleged state law violations. (Dkt. No. 14 at 7, 15).

Regarding the Plaintiff's state law claims under the TVEPA, the Court finds that Laredo College is entitled to governmental immunity, and as a result, this Court does not have jurisdiction over those claims.  There is no need for the Court to analyze the remaining claims because the parties agree that this Court does have jurisdiction over Plaintiff's breach of contract claims, that all defendants are entitled to immunity from Plaintiff's fraud claims, and that the individually named defendants are entitled to immunity from Plaintiff's state law claims.

## I.    BACKGROUND

Plaintiff, William Osinski, initiated this lawsuit in state court against Laredo College and five other defendants in their individual capacities.[2] (Dkt. No. 1).  Plaintiff asserted that Defendants violated the Uniformed Services Employment and Reemployment Rights Act and Texas law.  Defendants timely removed the case to federal court.  (Dkt. No. 1).  Plaintiff asked the Court to remand the proceedings to state court, Dkt. No. 8, and Defendants responded in opposition.  (Dkt. No. 10).  United States District Judge Marina Garcia Marmolejo denied Plaintiff's motion for remand, Dkt. No. 8, and referred the question regarding the viability of Plaintiff's state law claims to United States Magistrate Judge Christopher dos Santos.  (Dkt. No. 11).

## II.    LAW

The U.S. Constitution affords two types of sovereign immunities, sometimes referred to as constitutional immunity, to states: 1) Eleventh Amendment immunity,

---

[2] The other defendants are: Ricardo Solis, President of Laredo College; Marisela Rodriguez, Provost and Vice President of Academic Affairs at Laredo College; Horacio Salinas, Dean of Arts and Sciences at Laredo College; Maria Evangelina Soliz, Chair of the Visual and Performing Arts Department at Laredo College; and Veronica Cardenas, Director of Human Resources at Laredo College.  (Dkt. No. 1 at 15).

which applies to suits between a state and a citizen of another state; and 2) state sovereign immunity, which applies to suits against a state by a citizen (including the plaintiff's home state). *Tercero v. Texas Southmost College Dist.*, 989 F.3d 291, 296 (5th Cir. 2021); *see also Alden v. Maine*, 527 U.S. 706, 712–13 (1999). "The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances but does not extend to counties and similar municipal corporations . . . or other political subdivisions." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (cleaned up). A court must examine the entity in question and "its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje v. R. E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir. 1982). "Texas junior college districts are independent political subdivisions." *Hander v. San Jacinto Junior Coll.*, 522 F.2d 204, 205 (5th Cir. 1975) (per curiam) (cleaned up). Whether a particular government entity is protected by sovereign immunity or is considered a political subdivision of the state with no sovereign immunity is a question of federal law. *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 736 (W.D. Tex. 2011). This question "is largely informed by the nature of the entity created by State law." *Id.*

Texas governmental immunity, unlike constitutional immunity, applies to the state's political subdivisions, including junior college districts. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008) (stating that "governmental immunity protects subdivisions of the State, including municipalities

and school districts"); *see also* TEX. EDUC. CODE § 130.122(f) ("Each junior college district ... is hereby declared to be, and constituted as, a school district within the meaning of Article VII, Section 3, of the Texas Constitution."). "In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.*" Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). If a party has governmental immunity from suit it defeats a trial court's jurisdiction. *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013). The removal of an action to federal court does not automatically waive all aspects of immunity, there must also be legislative consent to sue the State. *See Bonillas*, 832 F. Supp. 2d at 736 (applying *Nagm v. University of Tex. Health Science Center at Houston*, 2005 WL 1185801, Case No. Civ. A. H-04-2132 (S.D. Tex. May 11, 2005) when determining whether governmental immunity had been waived).

"A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Morgan*, 724 F.3d at 582 n.4 (quoting *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006)). Immunity is waived if there is clear and unambiguous language doing so. *Tooke*, 197 S.W.3d at 328–29; *see Garcia*, 253 S.W.3d at 655 ("[w]e interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous."); TEX. GOV'T CODE § 311.034. The clear and unambiguous requirement is only a method to guarantee that courts adhere to legislative intent, so

it "should not be applied mechanically to defeat the true purpose of the law." *Kerrville State Hospital v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000). "If a statute leaves no reasonable doubt of its purpose, we will not require perfect clarity, even in determining whether governmental immunity has been waived." *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995) (superseded by statute).   Political subdivisions that have waived governmental immunity can be sued in federal court. *See United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 481 (5th Cir. 2007) (stating that political subdivisions that have waived governmental immunity can be sued in federal courts under diversity jurisdiction); *Tercero*, 989 F.3d at 298 (stating that political subdivisions that have waived governmental immunity can be sued in federal courts under supplemental jurisdiction).

## III.   <u>DISCUSSION</u>

The first issue is whether Laredo College is entitled to constitutional immunity.  This is a question of federal law.  *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F.Supp.2d 729, 736 (W.D. Tex. 2011).  Plaintiff relies on *Tercero* to assert that Laredo College is not entitled to either form of constitutional immunity for the claims under the TVEPA.  *See Tercero v. Texas Southmost College Dist.*, 989 F.3d 291, 296–97 (5th Cir. 2021) (discussing how political subdivisions are not entitled to Eleventh Amendment immunity or state sovereign immunity).  Plaintiff asserts that Laredo College is a political subdivision because it is a junior college district organized under Texas Education Code Chapter 130, and thus, is not entitled to constitutional immunity.  *See id.* at 296 (citations omitted).  In a previous order considering

Plaintiff's federal law claims under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), Dkt. No. 11, it was determined that Laredo College is a political subdivision in Texas and is not entitled to either form of constitutional immunity.[3]  That is true under this analysis of Plaintiff's state law claims of the TVEPA as well.

When examining whether a governmental entity is entitled to constitutional immunity the courts look at six factors: 1) whether the state statutes and case law view it as an arm of the state; 2) the source of its funding; 3) the degree of local autonomy it has; 4) whether it is concerned primarily with local, as opposed to statewide, problems; 5) whether it has authority to sue and be sued in its own name; and 6) whether it has the right to hold and use property.  *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744–45 (5th Cir. 1986); *see also Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).  These factors do not form a precise test, nor are the factors equal to each other,[4] but they are used to help the courts balance the equities and determine "whether the suit is in reality a suit against the state itself."  *See Hudson v. City of New Orleans*, 174 F.3d 677, 681–82 (quoting *Laje v. R. E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir. 1982)).

As discussed in a previous order, Dkt. No. 11, Laredo College expressly lists its legal status as a public junior college in its policy manual.  *See* "College District Legal

---

[3] That order relied in part on *Hander v. San Jacinto Junior Coll.*, 519 F.2d 273, 279 (5th Cir. 1975) and rejected Plaintiff's argument that because Texas Labor Code section 21.002 included institutions of higher education, such as Laredo College, in its definition of a "state agency" shows that Laredo College was a state agency for purposes of USERRA.

[4] The second factor is the most important, and the fifth and sixth factors are less important.  *See Williams*, 242 F.3d at 319 (citing *Hudson*, 174 F.3d at 681–82).

Status and History," Policy AA (Legal) available at https://pol.tasb.org/Policy/Download/1207?filename=AA(LEGAL).pdf (last accessed May 26, 2021). The Fifth Circuit has already determined that public junior colleges in Texas are political subdivisions of the state. *See Hander v. San Jacinto Junior Coll.*, 519 F.2d 273, 279 (5th Cir. 1975) (conducting an analysis that includes the most important factors laid out in *Clark*). *Hander* considered: the authority retained by junior colleges; how the establishment of junior colleges begins by local initiative; how the governing board of junior colleges obtain funding by issuing bonds and taxes, in addition to money appropriated by Texas biennially ; and that junior colleges enjoy the same legal status as independent school districts under Texas statutes, the Texas Constitution, and caselaw. *Id.* Moreover, this Court has the additional benefit of considering a recent opinion, *Tercero*,[5] which reaffirmed the Fifth Circuit's determination in *Hander* regarding junior colleges. *See Tercero*, 989 F.3d at 296–97 (considering Texas law in reaching the determination that Texas junior college districts are political subdivisions, and that political subdivisions are not entitled to constitutional immunity). Accordingly, Laredo College is a political subdivision that is not entitled to constitutional immunity.

The only immunity left to consider is whether Laredo College is a political subdivision entitled to governmental immunity or whether the Legislature has waived it in this instance. Plaintiff states that the TVEPA identifies junior colleges, such as Laredo College, as proper defendants because Texas Government Code

---

[5] The previous order in this case, Dkt. No. 11, was filed on February 11, 2021. *Tercero* was decided by the Fifth Circuit on February 24, 2021.

section 657.001 defines an institution of higher education, as defined by section 61.003 of the Texas Education Code, as a "state agency."   Plaintiff asserts that because the Legislature has identified Laredo College as a state agency for purposes of the TVEPA, it cannot be entitled to governmental immunity since that type of immunity only applies to a political subdivision.   Plaintiff would have this Court engage in a checklist-type analysis where it is first determined that Laredo College should be considered a political subdivision to deny it constitutional immunity.   Then, Plaintiff would have the Court determine that Laredo College is a state agency to deny it governmental immunity.   In reality these determinations do not exist in vacuums from each other.   *See Tercero*, 989 F.3d at 296–97 (discussing the various forms of immunity).   Laredo College cannot simultaneously be both a political subdivision and a state agency for purposes of determining which immunity applies.

When applying the *Clark* factors, and all the applicable facts already discussed above, to Plaintiff's assertion, it is not enough that section 657.001 of the TVEPA includes political subdivisions as part of the definition of "state agency" in order to deny that Laredo College is a political subdivision entitled to governmental immunity here.   *See Williams*, 242 F.3d at 319 (citing *Hudson*, 174 F.3d at 681–82) (listing the *Clark* factors and discussing their role in determining whether an entity is a state agency or not); *Tercero*, 989 F.3d at 297 (stating that governmental immunity applies to political subdivisions).   The other previously discussed factors, such as funding— the most important factor—continue to weigh in favor of the determination that Laredo College is a political subdivision for purposes of determining which type of

immunity it is entitled to.  Accordingly, this Court maintains that Laredo College is a political subdivision entitled to governmental immunity.

Plaintiff goes on to assert that defining Laredo College as a "state agency" for purposes of the TVEPA means the Legislature intended to waive governmental immunity.  However, merely including Laredo College in the definition of a state agency for purposes of the TVEPA is not enough to waive immunity.[6]  Since the TVEPA has no explicit waiver of immunity, this situation, at most, creates an ambiguity as to whether the Legislature intended to waive immunity in the TVEPA. Texas has examined certain factors when determining whether the Legislature has waived immunity despite not explicitly using the "magic words" stating immunity is waived.  *See Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). The factors include: 1) that a statute waiving immunity "must do so beyond doubt;" 2) that when construing a statute that purportedly waives immunity, the courts generally resolve ambiguities by retaining immunity; 3) that if the Legislature requires that the State be joined in a lawsuit where it would otherwise be entitled to immunity, that immunity is considered waived; and 4) considering whether the statute also limits the State's potential liability.  *Id.* at 697–98.

---

[6] The Court notes that the TVEPA contains no explicit waiver of immunity.  *See Texas Veterans Commission v. Lazarin*, 13-15-00045-CV, 2016 WL 5522117, at *7 (Tex. App.—Corpus Christi Feb. 11, 2016); *compare Mission Consol. Independent School Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008) (discussing how the Tort Claims Act defines a political subdivision as a governmental unit in Tex. Civ. Prac. & Rem. § 101.001(3), but also noting that the Tort Claims Act stated what a governmental unit is liable for under §§ 101.021 and 101.051 and that the Tort Claims Act explicitly waived immunity under § 101.025), *and* Tex. Lab. Code § 21.254 (waiving immunity by explicitly stating that a complainant may bring a civil action for violations of the Texas Commission on Human Rights Act), *with* Tex. Gov't Code § 657 (containing no explicit waiver of immunity within the chapter).

When considering the first factor, *Taylor* notes that a waiver could be found when the statute would be meaningless without it. *Id.* at 697 (citing *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 8 (Tex. 2000)). In *Kerrville*, the Supreme Court of Texas considered whether there was any purpose of the provisions in the Anti-Retaliation Law unless immunity had been waived, and it held that absent a waiver of immunity the law would have no purpose. *See Kerrville*, 28 S.W.3d at 6, 8. That is not the case here.

The TVEPA can be interpreted to have no waiver of immunity and still retain a meaningful purpose. This is because the TVEPA does provide recourse if a violation were to occur. *See* TEX. GOV'T CODE § 657.010. Under section 657.010 the TVEPA creates a complaint process that allows an aggrieved person protected by the TVEPA to appeal a decision by a state agency subject to the TVEPA "by filing a written complaint with the executive director of the state agency under this section." This is comparable to *Taylor* where the Supreme Court of Texas determined that Texas Health and Safety Code chapter 321 was not meaningless absent a waiver of immunity for state run mental health facilities because recourse still existed for aggrieved persons in certain situations. *Taylor*, 106 S.W.3d at 700 ("the fact that the Act remains viable despite the retention of immunity is one indication that the Legislature did not intend to waive immunity by implication."). While the recourse available to an aggrieved person under the TVEPA may not be the desired recourse for Plaintiff, that does not mean that there is no recourse available to him. Accordingly, this factor goes against a finding of a waiver of immunity.

The second factor in *Taylor* would have the Court consider that when there is an ambiguity, it should generally be resolved by retaining immunity if there is any doubt as to whether the Legislature intended to waive immunity. *Id.* at 697. When considered in conjunction with the other factors, the Court finds that the ambiguity created by the TVEPA leaves room to doubt that a waiver of immunity was intended meaning this factor goes against a finding of a waiver of immunity.

The third factor in *Taylor* has the Court consider whether the State is being joined in a lawsuit where immunity would otherwise attach. *Id.* Since that is not the case here this factor goes against a finding of a waiver of immunity.

Lastly, *Taylor* has the Court consider whether the statue at issue creates any limit on the State's potential liability because in many statutes waiving immunity there is a provision doing so. *Id.* at 697, 701. The TVEPA has no mention of damages or liability, so it is unlikely the Legislature intended to waive immunity. Accordingly, this factor goes against a finding of a waiver of immunity.

Thus, this situation is distinguishable from what the Supreme Court of Texas considered in *Kerrville*, and applying the reasoning in *Taylor*, it cannot be said that the TVEPA has a clear and unambiguous waiver of immunity. Because Laredo College is a political subdivision entitled to governmental immunity, and the TVEPA does not waive governmental immunity, the Court cannot exercise jurisdiction over Plaintiff's claims under the TVEPA. *See Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013) (discussing how governmental immunity from suit defeats a

trial court's jurisdiction).  Accordingly, Plaintiff's claims under the TVEPA should be dismissed for lack of jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons the Court **RECOMMENDS** that the District Court: **DISMISS** Plaintiff's claims stemming from alleged violations of the Texas Veteran's Service Employment Act for lack of jurisdiction as a result of the Defendant, Laredo College, having governmental immunity from those claims; **DISMISS** Plaintiff's state law fraud claims against all defendants; and **DISMISS** Plaintiff's state law claims against the individually named defendants.

## **Warnings**

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report—or the party's waiver of the right to do so—shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the

District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The Clerk is directed to send a copy of this Report and Recommendation to all parties.

**SIGNED** May 28, 2021.

Christopher dos Santos
United States Magistrate Judge